UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| TIMOTHY MUNRO ROBERTS,<br><br>                      Plaintiff,<br><br>vs.<br><br>UNITED STATES OF AMERICA; COLLETTE PETERS, BOP Director; YANKTON FPC WARDEN; DR. ROCK BOYD, Jointly and Individually; NAPHCARE, Jointly and Individually; and ESTILL FPC, WARDEN,<br><br>                      Defendants. | 4:23-CV-04116-KES<br><br><br>ORDER GRANTING PLAINTIFF'S MOTION TO PROCEED IN FORMA PAUPERIS AND 1915 SCREENING |
| TIMOTHY MUNRO ROBERTS,<br><br>                        Plaintiff,<br><br>vs.<br><br>UNITED STATES OF AMERICA; BOP DIRECTOR COLLETTE PETERS; YANKTON FPC, WARDEN; DR. ROCK BOYD, Jointly and Individually; NAPHCARE, Jointly and Individually; and ESTILL, FPC, WARDEN,<br><br>                      Defendants. | 4:23-CV-04166-KES |

Plaintiff, Timothy Munro Roberts, commenced this pro se civil rights lawsuit under 28 U.S.C. § 1331 and *Bivens v. Six Unknown Federal Narcotics*

*Agents*, 403 U.S. 388 (1971). Docket 1 at 1.[1] Roberts filed a nearly identical case in the District of South Carolina, which was transferred to the District of South Dakota as the proper venue. 4:23-CV-04166-KES Docket 1. The court consolidated the two cases with 4:23-CV-04116-KES as the lead case. Docket 8 at 2. Roberts moves for leave to proceed in forma pauperis and provided his financial affidavit. Docket 4.

I.   **Motion for Leave to Proceed In Forma Pauperis**

A federal court may authorize the commencement of any lawsuit without prepayment of fees when an applicant submits an affidavit stating he or she is unable to pay the costs of the lawsuit. 28 U.S.C. § 1915(a)(1). "[I]n forma pauperis status does not require a litigant to demonstrate absolute destitution." *Lee v. McDonald's Corp.*, 231 F.3d 456, 459 (8th Cir. 2000). But in forma pauperis status is a privilege, not a right. *Williams v. McKenzie*, 834 F.2d 152, 154 (8th Cir. 1987). Determining whether an applicant is sufficiently impoverished to qualify to proceed in forma pauperis under § 1915 is committed to the sound discretion of the district court. *Cross v. Gen. Motors Corp.*, 721 F.2d 1152, 1157 (8th Cir. 1983). After review of Roberts' financial affidavit, the court finds that he has insufficient funds to pay the filing fee. Thus, Roberts' motion for leave to proceed without prepayment of fees (Docket 4) is granted. This court now screens Roberts' complaint.

---

[1] Documents cited from 4:23-CV-04116-KES will be cited using the court's assigned docket number. Documents from Roberts' case transferred from South Carolina, 4:23-CV-04166-KES, will be cited using the court's assigned docket number preceded by "4:23-CV-04166-KES."

## II.     1915 Screening

### A.     Factual Background

The facts alleged in Roberts' complaint are: that defendants violated Roberts' constitutional rights by denying him access to medical care. Docket 1 at 1. In 2018, Roberts was incarcerated at the Federal Correctional Institute (FCI) Estill. Docket 1-1 at 1. A year after Roberts' arrival, he was working out when he heard a loud bone break and felt intense pain in his sternum. *Id.* Roberts consulted the FCI Estill physician assistant (PA), who was outsourced and only available a few times a month. *Id.* The PA ordered x-rays, which revealed that Roberts had a prior shoulder injury that healed improperly. *Id.* Roberts received cortisone injections and was prescribed Sulindac for inflammation. *Id.* He was advised to continue working out to strengthen his muscle. *Id.* Roberts continued to suffer pain in his sternum, back, spine, and shoulder blade. *Id.* at 2. He returned to see the PA but was denied further treatment. *Id.*

Roberts was transferred to the Yankton Federal Prison Camp (FPC). *Id.* He saw Dr. Rock Boyd for the continued pain, but Dr. Boyd "dismissed [Roberts'] concerns, claiming [he] had mental problems and that nothing was wrong." *Id.* Roberts alleges that Dr. Boyd "physically assaulted [him], jerking [his] injured arm and shoulder and threatening [him] with a shot if [he] persisted." *Id.* After a year of Roberts' complaints, Dr. Boyd ordered an x-ray, which revealed that Roberts' shoulder was severely out of place. *Id.* Roberts asked for a copy of the x-ray, but Dr. Boyd instructed the technician to not

save the image. *Id.* Roberts alleges that the warden and assistant warden at the Yankton FPC fired the medical records keeper and personally shredded two truckloads of medical records. *Id.*

Dr. Boyd refused all of Roberts' requests for an MRI and other forms of treatment. *Id.* Roberts claims that "[a]s a result of this medical negligence, [he] endured excruciating pain and now face[s] severe damage to [his] shoulder." *Id.*

Upon his release from prison in 2022, Roberts sought medical attention to confirm that he was not imagining the pain. *Id.* A summary from Roberts' doctor reveals injuries "requiring spine surgery on [C]4-[C]7, labrum repair, cutting of the collarbone, and inserting a 4[ inch] cadaver bone with an 8[ inch] titanium plate." *Id.* at 3. Roberts alleges he will need three surgeries: (1) surgery repairing his C3, C4, and C5 near his neck; (2) shoulder surgery four months after the first surgery; and (3) fusing of C6-C7 four months after the second surgery. Docket 5 at 1. Roberts alleges that he had surgery repairing his C3, C4, and C5 near his neck, but the surgery revealed a spinal fluid leak had occurred, resulting in complications. Docket 6 at 1; Docket 6-1 at 8.

Roberts claims that the "shoulder surgery is complex, necessitating the expertise of several specialist surgeons" and has a recovery period of about a year. Docket 1-1 at 3. Roberts has Medicaid coverage, and he claims that his "situation demands caution regarding earning over $19,000 to retain Medicaid coverage, as the medical expenses are beyond [his] means." *Id.*

4

Roberts sues the United States of America, Collette Peters, Yankton FPC Warden, and Estill FPC Warden in their official capacities.[2] Docket 1 at 1. This court construes Roberts' complaint as suing Dr. Rock Boyd and NaphCare in their individual capacities.[3] *Id.* He alleges that defendants violated his constitutional right to adequate medical care. *Id.* He also alleges a medical malpractice claim. *Id.* Roberts seeks $6,000,000.00 for "fair and just compensation for the violation of [his] civil rights, medical malpractice, negligence, and physical and mental torture." *Id.* at 3.

### B. Legal Background

When a district court determines a plaintiff is financially eligible to proceed in forma pauperis under 28 U.S.C. § 1915(a), the court must then determine whether the complaint should be dismissed under 28 U.S.C. § 1915(e)(2)(B). *See Martin-Trigona v. Stewart*, 691 F.2d 856, 857 (8th Cir. 1982) (per curiam); *see also Key v. Does*, 217 F. Supp. 3d 1006, 1007 (E.D. Ark. 2016). The court must dismiss a complaint if it "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

---

[2] If a plaintiff does not specify the capacity in which he or she sues a defendant, the suit is treated as only alleging official capacity claims. *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995); *Nix v. Norman*, 879 F.2d 429, 431 (8th Cir. 1989). Thus, Roberts sues United States of America, Collette Peters, Yankton FPC Warden, and Estill FPC Warden in only their official capacities.

[3] Roberts sues Dr. Boyd and NaphCare jointly and individually. Docket 1 at 1. Thus, the court liberally construes jointly and individually as suing Dr. Boyd and NaphCare in their individual capacities.

5

A court when screening under § 1915 must assume as true all facts well pleaded in the complaint. *Est. of Rosenberg v. Crandell*, 56 F.3d 35, 36 (8th Cir. 1995). Pro se and civil rights complaints must be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted); *see also Bediako v. Stein Mart, Inc.*, 35 F.3d 835, 839 (8th Cir. 2004) (citation omitted). Even with this construction, "a pro se complaint must contain specific facts supporting its conclusions." *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) (citation omitted); *see also Ellis v City of Minneapolis*, 518 F. App'x 502, 504 (8th Cir. 2013) (per curiam) (citation omitted).

A district court has the duty to examine a pro se complaint "to determine if the allegations provide for relief on any possible theory." *Williams v. Willits*, 853 F.2d 586, 588 (8th Cir. 1988) (citing *Bramlet v. Wilson*, 495 F.2d 714, 716 (8th Cir. 1974)). A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). *Twombly* requires that a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true[.]" *Id.* (citation and footnote omitted); *see also Abdullah v. Minnesota*, 261 F. App'x 926, 927 (8th Cir. 2008) (per curiam) (noting that a "complaint must contain either direct or inferential allegations respecting all material elements necessary to sustain recovery under some viable legal theory" (citing *Twombly*, 550 U.S. at 554–63)). If a complaint does not contain these bare

6

essentials, dismissal is appropriate. *See Beavers v. Lockhart*, 755 F.2d 657, 663–64 (8th Cir. 1985) (citation omitted) (explaining that a district court does not err when it dismisses a claim based on vague allegations or unsupported generalizations).

    **C.**    **Legal Analysis**

        **1.**    **Claims Against the United States of America**

Roberts names the United States of America as a defendant. Docket 1 at 2. "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) (citing *Loeffler v. Frank*, 486 U.S. 549, 554 (1988)). Because Roberts does not demonstrate a waiver of sovereign immunity, his claim against the United States of America is dismissed under 28 U.S.C. § 1915(e)(2)(B)(i-ii).

        **2.**    **Official Capacity Claims**

Roberts sues Collette Peters, Yankton FPC Warden, and Estill FPC Warden in their official capacities. "A *Bivens* action may not be asserted against the United States, its agencies, or against federal employees in their *official* capacity." *Little v. South Dakota*, No. 5:14-CV-05069-JLV, 2014 WL 6453844, at *3 (D.S.D. Nov. 17, 2014) (internal quotation omitted)). A suit against defendants in their official capacity is treated as a suit against the Federal Bureau of Prisons, an agency of the United States. *See Buford v. Runyon*, 160 F.3d 1199, 1203 (8th Cir. 1998). "[A] *Bivens* action cannot be prosecuted against the United States and its agencies because of sovereign immunity." *Id.* "Bivens and its progeny do not waive sovereign immunity for

7

actions against the United States[.]" *Laswell v. Brown*, 683 F.2d 261, 268 (8th Cir. 1982). Thus, the court finds that the doctrine of sovereign immunity bars Roberts' claims against Peters, Yankton FPC Warden, and Estill FPC Warden sued in their official capacities.

### 3. Individual Capacity Claim Against Dr. Boyd

#### a. Eighth Amendment Claim

Roberts alleges a *Bivens* claim against Dr. Boyd for deliberate indifference to serious medical needs in violation of his Eighth Amendment right to be free from cruel and unusual punishment. Docket 1 at 3. "A *Bivens* claim is a cause of action brought directly under the United States Constitution against a federal official acting in his or her individual capacity for violations of constitutionally protected rights." *Buford*, 160 F.3d at 1203 n.6 (citing *Bivens*, 403 U.S. at 388). "The purpose of *Bivens* is to deter individual federal officials from committing constitutional violations." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 70 (2001).

A *Bivens* remedy is not available for all constitutional violations; the Supreme Court has recognized three causes of action arising under *Bivens*. *Ziglar v. Abbasi*, 582 U.S. 120, 135, 137 (2017) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 672 (2009)). In *Bivens*, the Supreme Court recognized an implied cause of action under the Fourth Amendment against federal officers for handcuffing a man in his own home without a warrant. 403 U.S. at 389, 397. The Supreme Court has only recognized a *Bivens* remedy in two other contexts: a Fifth Amendment gender discrimination claim against a Congressman for

8

firing his female staffer, *Davis v. Passman*, 442 U.S. 228, 248–49 (1979), and an Eighth Amendment claim against federal prison officials for failure to treat an inmate's serious medical need that resulted in his death, *Carlson v. Green*, 446 U.S. 14, 24 (1980). Roberts asserts against Dr. Boyd a deliberate indifference claim in violation of his Eighth Amendment rights, which the Supreme Court recognized as a *Bivens* claim in *Carlson*.

"[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* at 104–05 (footnotes omitted). "This conclusion does not mean, however, that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. "[A] prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106. Allegations of negligence will not suffice, nor will mere disagreement with treatment decisions. *See Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000).

The deliberate indifference standard includes both an objective and subjective component. *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) (citing *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997)). The

9

plaintiff "must demonstrate (1) that [he] suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs." *Id.* (citing *Coleman*, 114 F.3d at 784). "A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Coleman*, 114 F.3d at 784 (citation and internal quotation omitted). To be liable for deliberately disregarding medical needs, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Roberts alleges sufficient facts to state a claim for deliberate indifference to medical needs against Dr. Boyd. He alleges that Dr. Boyd dismissed his concerns about pain claiming Roberts "had mental problems and that nothing was wrong." Docket 1-1 at 2. Roberts also claims that Dr. Boyd jerked his arm and shoulder despite his complaints of pain. *Id.* Dr. Boyd allegedly waited a year before ordering an x-ray on Roberts' injured arm, and Roberts claims that Dr. Boyd has refused all his requests for an MRI or other forms of treatment. *Id.* While some claims may be a disagreement with treatment, the court is unable to find that Roberts' claims are wholly without merit. Thus, Roberts' claim for violation of his Eighth Amendment rights against Dr. Boyd in his individual capacity survives § 1915 screening.

### b. State-Law Medical Malpractice Claim

Roberts brings a claim for state-law medical malpractice against Dr. Boyd. Docket 1 at 3. This court has supplemental jurisdiction over Roberts' state-law medical malpractice claim under 28 U.S.C. § 1367(a). "In order to prevail in a suit based on negligence, a plaintiff must prove duty, breach of that duty, proximate and factual causation, and actual injury." *Hanson v. Big Stone Therapies, Inc.*, 916 N.W.2d 151, 158 (S.D. 2018) (quoting *Hamilton v. Sommers*, 855 N.W.2d 855, 861 (S.D. 2014)). "In a suit for professional negligence, the plaintiff must prove that the professional deviated from the required standard of care." *Id.* (citing *Magbuhat v. Kovarik*, 382 N.W.2d 43, 46 (S.D. 1986)).

Roberts alleges facts sufficient to state a claim for medical malpractice under South Dakota state law. He alleges that Dr. Boyd was the sole doctor at the Yankton FPC; he generally alleges that he saw Dr. Boyd for treatment and Dr. Boyd owed him a duty. Docket 1-1 at 2. Roberts alleges that Dr. Boyd failed to provide proper medical case, which is a breach of duty, and that he has suffered harm as a result of this breach. *Id.* Thus, Roberts' state-law medical malpractice claim against Dr. Boyd survives § 1915 screening.

### 4. Claims Against NaphCare

Roberts' complaint names as a defendant NaphCare. Docket 1 at 1. The complaint does not assert any claims against NaphCare or otherwise allege that it was involved with violating Roberts' constitutional rights. Thus, Roberts fails

11

to state a claim upon which relief can be granted, and the claims against NaphCare are dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii).

### III. Motion to Appoint Counsel

Roberts states in his complaint that he "seek[s] legal representation to pursue justice for the negligence and violation of [his] rights during [his] time in custody." Docket 1 at 3. This court liberally construes Roberts' request as a motion to appoint counsel. "A pro se litigant has no statutory or constitutional right to have counsel appointed in a civil case." *Stevens v. Redwing*, 146 F.3d 538, 546 (8th Cir. 1998). The court "may request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1). When determining whether to appoint counsel to a pro se litigant, the court considers the "factual complexity of the case, the ability of the indigent to investigate the facts, the existence of conflicting testimony, the ability of the indigent to present his claim and the complexity of the legal issues." *Abdullah v. Gunter*, 949 F.2d 1032, 1035 (8th Cir. 1991) (citation omitted). Roberts' claims do not appear to be factually or legally complex, and his filings clearly set forth his claims. Because this court believes that Roberts can adequately present his claims at this time, his motion for appointment of counsel, Docket 1 at 3, is denied.

Thus, it is ORDERED:

1. That Roberts' motion to proceed in forma pauperis, Docket 4, is granted.

2. That Roberts' claims against the United States of America are dismissed under 28 U.S.C. § 1915(e)(2)(B)(i-ii).

12

3. That Roberts' claims against Peters, Yankton FPC Warden, and Estill FPC Warden in their official capacities are dismissed under 28 U.S.C. § 1915(e)(2)(B)(i-ii).

4. That Roberts' claim for violation of his Eight Amendment rights against Dr. Boyd in his individual capacity survives § 1915 screening.

5. That Roberts' state-law medical malpractice claim against Dr. Boyd survives § 1915 screening.

6. That Roberts' claims against NaphCare are dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii).

7. That Roberts' motion for appointment of counsel, Docket 1 at 3, is denied.

8. That the Clerk of Court shall send a blank summons form and Marshal Service Form (Form USM-285) to Roberts so that he may cause the complaint to be served upon defendant Dr. Boyd.

9. That Roberts shall complete and send the Clerk of Court a summons and USM-285 form for defendant Dr. Boyd. Upon receipt of the completed summon and USM-285 form, the Clerk of Court will issue the summons. If the completed summons and USM-285 form are not submitted as directed, the complaint may be dismissed.

10. The United States Marshal Service shall serve the completed summons, together with a copy of the complaint (Docket 1), and this order, upon defendant Dr. Boyd.

11. Defendant Dr. Boyd will serve and file an answer or responsive pleading to the amended complaint on or before 21 days following the date of service or 60 days if the defendant falls under Fed. R. Civ. P. 12(a)(2) or (3).

12. Roberts will keep the court informed of his current address at all times. All parties are bound by the Federal Rules of Civil Procedure and by the court's Local Rules while this case is pending.

Dated November 17, 2023.

                BY THE COURT:

                /s/ *Karen E. Schreier*
                KAREN E. SCHREIER
                UNITED STATES DISTRICT JUDGE